Citation Nr: 1814062 
Decision Date: 03/06/18 Archive Date: 03/14/18

DOCKET NO. 14-18 718A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUES

1. Whether new and material evidence has been received to reopen the claim of entitlement to service connection for posttraumatic stress disorder (PTSD), and if so, entitlement to service connection for an acquired psychiatric disorder, to include PTSD as due to in-service stressors and/or major depressive disorder as secondary to the service-connected sarcoidosis.

2. Whether new and material evidence has been received to reopen the claim of entitlement to service connection for a sleep disorder, and if so, entitlement to service connection for a sleep disorder, to include as secondary to the pain from the service-connected disabilities.

3. Entitlement to service connection for a disability manifested by dizziness. 

4. Entitlement to a rating higher than 20 percent for residuals of a recurrent left shoulder dislocation, and a possible fracture of the acromioclavicular joint with degenerative changes.

5. Entitlement to a rating higher than 30 percent for sarcoidosis, with respiratory impairment. 

6. Entitlement to a rating higher than 20 percent for polyarthritis/ degenerative joint disease of the cervical spine.

7. Entitlement to a higher rating for polyarthritis, with lumbar degenerative disc disease and herniated nucleus pulposus since April 17, 2013.

8. Entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left ankle since April 17, 2013.

9. Entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left wrist since April 17, 2013. 

10. Entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the right wrist since April 17, 2013.

11. Entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left hand since April 17, 2013.

12. Entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the right hand since April 17, 2013.

13. Entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left elbow since April 17, 2013.

14. Entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the right elbow since April 17, 2013.

15. Entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left foot since April 17, 2013.

16. Entitlement to a higher rating for sarcoidosis, with polyarthritis, affecting the right foot since April 17, 2013.

(The issue of entitlement to service connection for a vision disorder is the subject of a separate decision of the Board.)


REPRESENTATION

Veteran represented by: C. H. Thornton, Jr., Attorney


WITNESSES AT HEARING ON APPEAL

Veteran and his spouse


ATTORNEY FOR THE BOARD

J. T. Brant, Counsel


INTRODUCTION

The Veteran had active service from November 1971 to November 1975. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2010 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). 

In June 2015, the Board remanded these claims to afford the Veteran his requested hearing. In September 2017, the Veteran testified at a Video Conference hearing before the undersigned Veterans Law Judge. The matter is now back before the Board.
The reopened issues of entitlement to service connection for an acquired psychiatric disorder and a sleep disorder, and the issue of entitlement to service connection for dizziness, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. An unappealed August 2002 Board decision denied the claim of entitlement to service connection for PTSD. The Veteran was notified of that decision, but did not initiate an appeal.

2. Some of the evidence received since August 2002, when considered by itself or in connection with evidence previously assembled, relates to unestablished facts necessary to substantiate the claim, and raises a reasonable possibility of substantiating the claim of service connection for PTSD.

3. An unappealed August 2007 rating decision denied the claim of entitlement to service connection for psychophysiological insomnia, nightmare disorder, borderline periodic limb movement disorder, and inadequate sleep hygiene, claimed as a sleep disorder. The Veteran was notified of that decision, but did not initiate an appeal, and new and material evidence was not received within one year of the notice of that rating decision.

4. Some of the evidence received since August 2007, when considered by itself or in connection with evidence previously assembled, relates to unestablished facts necessary to substantiate the claim, and raises a reasonable possibility of substantiating the claim of service connection for a sleep disorder.

5. In September 2017, prior to the promulgation of a decision in the appeal, the Board received notification from the Veteran that a withdrawal of his appeals for entitlement to increased ratings for his service-connected left shoulder, sarcoidosis, cervical spine, lumbar spine, left ankle, left wrist, right wrist, left hand, right hand, left elbow, right elbow, left foot, and right foot disabilities, is requested.
CONCLUSIONS OF LAW

1. The August 2002 Board decision, which denied entitlement to service connection for PTSD, became final. 38 U.S.C. § 7104(b) (2012); 38 C.F.R. § 20.1100 (2017).

2. The additional evidence presented since the August 2002 Board decision is new and material, and the claim of service connection for PTSD is reopened. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156(a) (2017).

3. The August 2007 rating decision, which denied the Veteran's claim of entitlement to service connection for a sleep disorder, is final. 38 U.S.C. § 7105(c) (2012); 38 C.F.R. §§ 3.104, 3.156, 20.201, 20.302, 20.1103 (2017).

4. The evidence received since the August 2007 rating decision is new and material, and the claim of entitlement to service connection for a sleep disorder is reopened. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (2017).

5. The criteria for withdrawal of the issue of entitlement to a rating higher than 20 percent for residuals of a recurrent left shoulder dislocation, and a possible fracture of the acromioclavicular joint with degenerative changes, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

6. The criteria for withdrawal of the issue of entitlement to a rating higher than 30 percent for sarcoidosis, with respiratory impairment, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

7. The criteria for withdrawal of the issue of entitlement to a rating higher than 20 percent for polyarthritis/ degenerative joint disease of the cervical spine, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

8. The criteria for withdrawal of the issue of entitlement to a higher rating for polyarthritis, with lumbar degenerative disc disease and herniated nucleus pulposus since April 17, 2013, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

9. The criteria for withdrawal of the issue of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left ankle since April 17, 2013, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

10. The criteria for withdrawal of the issue of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left wrist since April 17, 2013, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

11. The criteria for withdrawal of the issue of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the right wrist since April 17, 2013, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

12. The criteria for withdrawal of the issue of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left hand since April 17, 2013, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

13. The criteria for withdrawal of the issue of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the right hand since April 17, 2013, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

14. The criteria for withdrawal of the issue of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left elbow since April 17, 2013, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

15. The criteria for withdrawal of the issue of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the right elbow since April 17, 2013, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

16. The criteria for withdrawal of the issue of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left foot since April 17, 2013, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

17. The criteria for withdrawal of the issue of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the right foot since April 17, 2013, by the Veteran, have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Claims to Reopen 

In order to reopen a claim which has been denied by a final decision, the claimant must present new and material evidence. 38 U.S.C. § 5108. New evidence means existing evidence not previously submitted to VA. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). For purposes of reopening a claim, the credibility of newly submitted evidence is generally presumed. See Justus v. Principi, 3 Vet. App. 510, 513 (1992) (in determining whether evidence is new and material, the "credibility" of newly presented evidence is to be presumed unless the evidence is inherently incredible or beyond the competence of the witness).

The language of 38 C.F.R. § 3.156(a) creates a low threshold for finding new and material evidence, and views the phrase "raises a reasonable possibility of substantiating the claim" as "enabling rather than precluding reopening." Evidence "raises a reasonable possibility of substantiating the claim," if it would trigger VA's duty to provide an examination in adjudicating a non-final claim. Shade v. Shinseki, 24 Vet. App. 110 (2010).

 PTSD

Historically, the Board originally denied entitlement to service connection for PTSD in an August 2002 decision based on the determination that the Veteran did not have PTSD due to his in-service experiences and the Veteran did not have an acquired psychiatric disorder etiologically related to his service-connected disabilities. The Veteran did not appeal the denial, and it became final. In February 2005, the Veteran submitted evidence that the RO accepted as a claim to reopen entitlement to service connection for PTSD. In a March 2007 rating decision, the RO denied to reopen the claim for entitlement to service connection for PTSD. In April 2007, the Veteran requested reconsideration of the March 2007 rating decision, and, in a July 2010 rating decision, the RO denied reopening entitlement to service connection for PTSD. The Veteran has appealed this rating decision.

At the time of the Board's denial in August 2002, the evidence consisted of the Veteran's service treatment records, his military personnel records, private psychiatric treatment records, VA mental health clinic records between 1998 and 2000, several VA examinations and opinions (October 1996, February 1997, November 1997, March 2001, and May 2001), Social Security Administration (SSA) records, a transcript from a decision review officer hearing dated in November 1997, and the Veteran's lay statements. The service treatment records did not contain a diagnosis of PTSD or any other acquired psychiatric disorder. Post-service, although one VA staff physician diagnosed PTSD in April 2000, the other private and VA doctors rendered diagnoses of anxiety and depression linked to the death of the Veteran's brother, his substance abuse, and his family and job problems. 

The additional evidence presented since the Board's denial in August 2002 includes the Veteran's military personnel records, PTSD stressor statements, buddy statements, updated VA treatment records, nexus opinions from various treating providers, a March 2012 VA examination, and the Veteran's September 2017 hearing testimony. The VA treatment records show that the Veteran has been receiving ongoing treatment for major depressive disorder and anxiety disorder, not otherwise specified versus PTSD. In March 2003, Dr. N. N. noted diagnoses of PTSD and depression with generalized anxiety disorder. In the PTSD stressor statements, the Veteran provided more detailed regarding his claimed PTSD stressors. In January 2005, Dr. B. C. indicated that the Veteran has had posttraumatic stress with panic attacks since he was stationed in Thailand. Dr. B. C. noted the Veteran's reported in-service stressors and indicated that the Veteran continues to have panic attacks and anxiety from these stresses. In August 2006, B. F., a licensed clinical social worker, indicated that the Veteran suffered from chronic PTSD which began in service. The Board concludes that this evidence is new and material because it was not of record at the time of the last final Board decision in August 2002, and it raises a reasonable possibility of substantiating the claim, as it provides diagnoses of PTSD, descriptions of the Veteran's in-service stressors, and nexus opinions. 

Accordingly, the Board finds that new and material evidence has been received to reopen the Veteran's previously denied claim of service connection for PTSD. 

 Sleep Disorder

Historically, the Board originally denied entitlement to service connection for insomnia in an August 2002 decision. The Veteran did not appeal the denial, and it became final. In April 2007, the Veteran filed a claim to reopen his previously denied claim for service connection for a sleep disorder, claimed as secondary to the pain caused from his service-connected shoulder and lung conditions. In an August 2007 rating decision, the RO denied the claim for entitlement to service connection for a sleep disorder based on the determination that there was no evidence showing a sleep disorder in service and no medical evidence linking the currently diagnosed sleep disorders to service. The Veteran did not appeal this denial, and it became final. In September 2009, the Veteran filed a claim to reopen his previously denied claim for service connection for a sleep disorder. In a July 2010 rating decision, the RO denied reopening entitlement to service connection for insomnia. The Veteran has appealed this rating decision. The Board notes that although the RO has treated the August 2002 Board decision as the last final denial for a claim of service connection for a sleep disorder, as discussed above, the August 2007 rating decision was, in fact, the last final denial. 

At the time of the last final rating decision in August 2007, whereby the RO denied service connection for a sleep disorder, the evidence consisted of the Veteran's service treatment records, his military personnel records, VA treatment records, a January 2007 sleep study, and the Veteran's lay statements. On the Veteran's separation examination in August 1975, the Veteran reported frequent trouble sleeping; however, a diagnosis of a sleep disorder was not rendered. The VA treatment records noted complaints of trouble sleeping. The January 2007 sleep study revealed diagnoses of psychophysiological insomnia (stress-related and conditioned, with depression and anxiety), nightmare disorder, borderline periodic limb movement disorder, inadequate sleep hygiene, and rule out sleep behavior disorder/insomnia due to medical condition (pain, discomfort).

The additional evidence presented since the last final denial in August 2007 includes additional VA treatment records and the Veteran's September 2017 hearing testimony. The VA treatment records contain the results of a sleep study performed in August 2016. In a November 2016 VA treatment record, the Veteran was diagnosed with insomnia due to pain. The Board concludes that this evidence is new and material because it was not of record at the time of the last final rating decision in August 2007, and it raises a reasonable possibility of substantiating the claim, as it provides a diagnosis of insomnia and a possible etiology of the Veteran's insomnia as due to pain.

Accordingly, the Board finds that new and material evidence has been received to reopen the Veteran's previously denied claim of service connection for a sleep disorder. 

Dismissals

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C. § 7105 (2012). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2017). Withdrawal may be made by the Veteran or by his or her authorized representative. 38 C.F.R. § 20.204. In the present case, the Veteran, in his September 2017 Video Conference hearing, has withdrawn the appeals of entitlement to increased ratings for his service-connected left shoulder, sarcoidosis, cervical spine, lumbar spine, left ankle, left wrist, right wrist, left hand, right hand, left elbow, right elbow, left foot, and right foot disabilities. Hence, there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review the appeals of these issues and they are dismissed.


ORDER


New and material evidence having been received, the claim of entitlement to service connection for PTSD is reopened, and to this extent only, the appeal is granted.

New and material evidence having been received, the claim of entitlement to service connection for a sleep disorder is reopened, and to this extent only, the appeal is granted.

The claim of entitlement to a rating higher than 20 percent for residuals of a recurrent left shoulder dislocation, and a possible fracture of the acromioclavicular joint with degenerative changes, is dismissed.

The claim of entitlement to a rating higher than 30 percent for sarcoidosis, with respiratory impairment, is dismissed.

The claim of entitlement to a rating higher than 20 percent for polyarthritis/ degenerative joint disease of the cervical spine, is dismissed.

The claim of entitlement to a higher rating for polyarthritis, with lumbar degenerative disc disease and herniated nucleus pulposus since April 17, 2013, is dismissed.

The claim of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left ankle since April 17, 2013, is dismissed.

The claim of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left wrist since April 17, 2013, is dismissed.

The claim of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the right wrist since April 17, 2013, is dismissed.

The claim of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left hand since April 17, 2013, is dismissed.

The claim of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the right hand since April 17, 2013, is dismissed.

The claim of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left elbow since April 17, 2013, is dismissed.

The claim of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the right elbow since April 17, 2013, is dismissed.

The claim of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the left foot since April 17, 2013, is dismissed.

The claim of entitlement to a higher rating for sarcoidosis, with polyarthritis affecting the right foot since April 17, 2013, is dismissed.

REMAND

Acquired Psychiatric Disorder

The Veteran is seeking entitlement to service connection for an acquired psychiatric disorder, to include depression and/or PTSD. Most recently, he has contended that he has depression secondary to his service-connected sarcoidosis. In his September 2017 hearing, he testified that his depression began during the last part of his service when he was diagnosed with sarcoidosis and was going through a lot of changes with that, and it then worsened over the years. He has also described several in-service stressors from his service in Thailand, to include from unloading body bags from planes from Vietnam, an attempted robbery by three men with machetes, and being a passenger on a plane with fuel and mechanical problems mid-air. See, e.g., January 2005 statement from Dr. B. C., March 2005 PTSD stressor statement, and June 2006 statement from Veteran.

The Veteran's service treatment records are silent for any complaints of, or treatment for, psychological problems during service. The Veteran's post-service treatment records show ongoing psychiatric treatment since approximately 1994 and various psychiatric diagnoses during the current appeal period, to include major depressive disorder, PTSD, and PTSD vs. anxiety disorder not otherwise specified (NOS). See, e.g., August 2006 statement from licensed clinical social worker B. F. (noting a diagnosis of PTSD), January 2010 VA treatment record (noting a diagnosis of PTSD vs. anxiety disorder NOS), and March 2012 VA examination (noting the Veteran did not meet the full criteria for PTSD and giving a diagnosis of major depressive disorder).

There are also numerous etiology opinions of record which have linked the Veteran's variously diagnosed psychiatric disorders to a variety of causes, to include the death of the Veteran's brother, his substance abuse, situational factors including problems with his job and family, his service in Thailand, and his service-connected sarcoidosis. See, e.g., April 1996 opinion from Dr. D. D. (indicating he noticed the Veteran developed situational anxiety and depressive disorder around May 1994 because he had to quit his job due to back and leg pain from a work accident and diagnosing PTSD with employment problems aggravating his depression), October 1997 opinion from licensed clinical social worker B. F. (finding sarcoidosis in service resulted in behavioral changes, "weird thoughts" and weight loss, which was probably the first outward sign of major depression), November 1997 VA opinion (finding the etiology of the Veteran's depression was his sarcoidosis as well as his working conditions and more recently being forced to resign from work in March 1996), June 2000 opinion from Dr. R. M. (explaining the Veteran developed drinking and drugging after he developed chronic pain problems and lost his job), August 2000 opinion from Dr. R. M. (finding the Veteran had PTSD from military service in Thailand during the Vietnam War and depression since service), May 2001 VA opinion (finding that the most important factor in the Veteran's anxiety and depression was the loss of his brother, with substance abuse and other situational factors as secondary, and no evidence his service-connected disabilities played any role), January 2005 opinion from Dr. B. C. (finding the Veteran had posttraumatic stress with panic attacks since being stationed in Thailand), and August 2006 opinion from B. F. (finding the Veteran suffered from PTSD which began during service from reported stressors). However, these opinions do not sufficiently address all of the Veteran's various theories. Most recently, in the March 2012 VA examination, the examiner found that the Veteran did not meet the full criteria for PTSD. The examiner instead diagnosed major depressive disorder. However, this examiner did not provide an etiology opinion for the diagnosed major depressive disorder. 

In view of the foregoing, the Board finds there is insufficient medical evidence to make a decision on the claim. As such, the Veteran should be afforded a VA psychiatric examination that addresses the nature and etiology of any current diagnosed acquired psychiatric disorder, to include whether he has an acquired psychiatric disorder secondary to his service-connected sarcoidosis. 






Sleep Disorder

The Veteran contends he has a sleep disorder secondary to the pain from his service-connected disabilities. He has also reported sleep problems in relation to his depression.

On the Veteran's separation examination in August 1975, the Veteran reported frequent trouble sleeping; however, a diagnosis of a sleep disorder was not rendered. Instead, the examiner referenced a July 1975 Internal Medicine Consultation, which revealed a diagnosis of sarcoidosis following examination for complaints of easy fatigability and weight loss. A January 2007 sleep study revealed diagnoses of psychophysiological insomnia (stress-related and conditioned, with depression and anxiety), nightmare disorder, borderline periodic limb movement disorder, inadequate sleep hygiene, and rule out sleep behavior disorder/insomnia due to medical condition (pain, discomfort). VA treatment records revealed complaints of trouble sleeping. An August 2016 sleep study was negative for obstructive sleep apnea. In a November 2016 VA treatment record, the Veteran reported not being able to sleep due to pain. The assessment was insomnia due to pain. Chronic sleep impairment has also been noted as a symptom of the Veteran's acquired psychiatric disorders. See, e.g., March 2012 VA examination.

The Veteran has not yet been afforded a VA examination for his claimed sleep disorder. In light of the foregoing and under the duty to assist, the Veteran should be afforded a VA examination to determine the nature and etiology of any diagnosed sleep disorder. In particular, the examiner should clarify whether the Veteran has a separately diagnosed sleep disorder that is secondary to the pain from his service-connected disabilities (caused or aggravated by) or whether the Veteran's complaints of sleep trouble are actually symptoms of an acquired psychiatric disorder.

Dizziness

The Veteran contends that he has a disability manifested by dizziness that first started in service.
In a July 1975 Internal Medicine Consultation, the Veteran was diagnosed with sarcoidosis after complaining of dizziness, easy fatigability, and weight loss. Post-service records show that the Veteran complained of feeling "funny, dizzy, weak and loss of breath" on a February 1977 appeal on a VA Form 9 shortly after his discharge from service. In a May 2017 VA treatment record, the Veteran complained of dizziness for the past 40 years. He noted that he felt like he was going to faint when he felt dizzy, and this occurred mostly when he stood up. He noted that he had previously seen a cardiologist for his complaints. The assessment did not reveal any neurological deficits or any concern for neurological causes of dizziness.

The Veteran has not yet been afforded a VA examination for his claimed dizziness. In light of the foregoing and under the duty to assist, the Veteran should be afforded a VA examination to determine the nature and etiology of any diagnosed disability manifested by dizziness. In particular, the examiner should clarify whether the Veteran has a separately diagnosed disability manifested by dizziness that is etiologically related to service or secondary to his service-connected sarcoidosis (caused or aggravated by), or whether the Veteran's complaints of dizziness are actually symptoms of the service-connected sarcoidosis.

While on remand, updated treatment records should be obtained.

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran, and, with his assistance, identify 
any outstanding records of pertinent medical treatment from VA or private health care providers. If VA attempts to obtain any outstanding records which are unavailable, the Veteran should be notified in accordance with 38 C.F.R. § 3.159(e).

2. Thereafter, arrange for the Veteran to undergo a VA 
 psychiatric examination in order to determine the 
 nature and etiology of any psychiatric disorder(s) 
 which may be present (under DSM-IV criteria), to 
 include PTSD and major depressive disorder. The 
 claims file, including a copy of this remand, must be 
 made available to and reviewed by the examiner in 
 conjunction with the examination. Any further 
 indicated tests and studies, to include psychological 
 studies, should be conducted to identify all current 
 psychiatric disorders. 

After the record review and a thorough examination and interview of the Veteran, the VA examiner should offer his/her opinion with supporting rationale as to the following inquiries:

(a) The examiner should identify with specificity any acquired psychiatric disorder that is currently manifested, or that has been manifested at any time since February 2005. The examiner should also indicate whether the Veteran's complaints of sleep trouble are related to any diagnosed psychiatric disorder.

 The examiner should consider past diagnoses that 
 are currently presented or indicated in the record 
 at any time since February 2005, to specifically 
 include the diagnoses of major depressive disorder 
 (March 2012 VA examination and various VA
 treatment records), PTSD (August 2006 statement 
 from licensed clinical social worker B. F.), and 
 PTSD vs. anxiety disorder NOS (January 2010 
 VA treatment record).

(b) If a diagnosis of PTSD is warranted, the examiner should opine whether it is at least as likely as not (i.e. probability of 50 percent or greater) that such diagnosis is related to his reported in-service stressors.

(c) For each acquired psychiatric disorder other than PTSD that is currently shown or that has been manifested at any time since February 2005, the examiner should opine whether it is at least as likely as not (i.e. probability of 50 percent or greater) that such disability was either incurred in, or is otherwise related to, the Veteran's active duty service.

(d) For each acquired psychiatric disorder other than PTSD that is currently shown or that has been manifested at any time since February 2005, provide an opinion as to whether it is at least as likely as not (50 percent probability) that such disability was (1) caused by or (2) aggravated (permanently worsened beyond the normal progression) by the Veteran's service-connected disabilities, to specifically include his service-connected sarcoidosis.

If aggravation is found, the examiner should address the following medical issues:
(1) the baseline manifestations of the Veteran's disability found prior to aggravation; and (2) the increased manifestations which, in the examiner's opinion, are proximately due to the service-connected disability. 


A clear rationale for all opinions must be provided, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. If the examiner is unable to render an opinion, he/she should so state with supporting rationale.

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports, including those of continuity of symptomatology, must be acknowledged and considered in formulating any opinion. If the examiner rejects the Veteran's reports, the examiner must provide a reason for doing so.

3. After the development in step 1 has been
 completed, schedule the Veteran for a VA 
examination to determine the nature and etiology of his claimed sleep disorder. The claims folder, including a copy of this remand, must be made available to the examiner, and the examiner must review the entire claims file in conjunction with the examination. All tests and studies deemed necessary should be conducted.

 The examiner is asked to:

 (a) Identify any currently diagnosed sleep 
 disorder(s).

 The examiner should consider any findings 
 with the post-service treatment records 
 showing diagnoses of insomnia. See, e.g., 
 January 2007 sleep study and November 2016 
 VA treatment record.
 (b) Provide an opinion as to whether it is at 
 least as likely as not (50 percent or better 
 probability) that any currently diagnosed sleep 
 disorder is etiologically related to the 
 Veteran's active duty service.

 The examiner should note and address the 
 Veteran's reports of frequent trouble sleeping 
 on separation from service in August 1975 and
 the July 1975 Internal Medicine Consultation, 
 which revealed a diagnosis of sarcoidosis 
 following examination for complaints of easy 
 fatigability and weight loss.

(c) Provide an opinion as to whether it is at least as likely as not (50 percent probability) that any diagnosed sleep disorder was (1) caused by or (2) aggravated (permanently worsened beyond the normal progression) by the pain from the Veteran's service-connected disabilities.

The examiner should note and address the January 2007 sleep study, which noted a diagnosis of "rule out sleep behavior disorder/insomnia due to medical condition (pain, discomfort)" and the November 2016 VA treatment record, in which the Veteran was assessed with insomnia due to pain.

If aggravation is found, the examiner should address the following medical issues:
 (1) the baseline manifestations of the Veteran's 
disability found prior to aggravation; and (2) the increased manifestations which, in the examiner's opinion, are proximately due to the service-connected disability. 

A clear rationale for all opinions must be provided, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. If the examiner is unable to render an opinion, he/she should so state with supporting rationale.

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports, including those of continuity of symptomatology, must be acknowledged and considered in formulating any opinion. If the examiner rejects the Veteran's reports, the examiner must provide a reason for doing so.

4. After the development in step 1 has been completed, 
 schedule the Veteran for a VA examination to 
 determine the nature and etiology of his claimed 
 disability manifested by dizziness. The claims folder,
 including a copy of this remand, must be made 
 available to the examiner, and the examiner must 
 review the entire claims file in conjunction with the 
 examination. All tests and studies deemed necessary 
 should be conducted.

 The examiner is asked to:

 (a) Clarify whether the Veteran has a diagnosed 
 disability manifested by dizziness, separate 
 from his service-connected sarcoidosis.

 The examiner should reconcile any findings 
 with the July 1975 Internal Medicine 
 Consultation, in which the Veteran was 
 diagnosed with sarcoidosis after complaining of 
 dizziness, easy fatigability, and weight loss.

 If the Veteran has a currently diagnosed 
 disability manifested by dizziness, separate 
 from his service-connected sarcoidosis, the 
 examiner should: 

 (b) Provide an opinion as to whether it is at 
 least as likely as not (50 percent or better 
 probability) that the diagnosed dizziness 
 disability is etiologically related to the 
 Veteran's active duty service.

 The examiner should note and address the
 Veteran's complaints of dizziness in service in 
 July 1975; the Veteran's complaints of feeling 
 "funny, dizzy, weak and loss of breath" on his 
 February 1977 appeal on a VA Form 9 shortly 
 after his discharge from service; and the
 Veteran's complaints of dizziness for the past 
 40 years in the May 2017 VA treatment record. 

 (c) Provide an opinion as to whether it is at 
 least as likely as not (50 percent probability) 
that the dizziness disability was (1) caused by or (2) aggravated (permanently worsened beyond the normal progression) by the Veteran's sarcoidosis.

If aggravation is found, the examiner should address the following medical issues:
 (1) the baseline manifestations of the Veteran's 
disability found prior to aggravation; and (2) the increased manifestations which, in the examiner's opinion, are proximately due to the service-connected disability. 

A clear rationale for all opinions must be provided, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. If the examiner is unable to render an opinion, he/she should so state with supporting rationale.

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports, including those of continuity of symptomatology, must be acknowledged and considered in formulating any opinion. If the examiner rejects the Veteran's reports, the examiner must provide a reason for doing so.

5. After completing the above development, and any 
 other development deemed necessary, readjudicate 
 the issues on appeal. If any benefit sought on appeal 
 remains denied, issue a Supplemental Statement of the 
 Case, and provide the Veteran and his representative 
 sufficient time in which to respond. Then, return the 
 appeal to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).








______________________________________________
S. HENEKS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs